J-S74016-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: B.F., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: A.R., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 2908 EDA 2019 |

Appeal from the Order Entered September 20, 2019
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s):  CP-51-DP-0001427-2019

BEFORE:   BENDER, P.J.E., MURRAY, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY MURRAY, J.:                    **FILED FEBRUARY 14, 2020**

A.R. (Mother) appeals from the order adjudicating her three-year-old son, B.F. (Child)[1], dependent, and placing him in kinship care with his paternal grandparents.[2,3]  Upon review, we affirm.

The record reveals that on September 3, 2019, the Philadelphia Department of Human Services (DHS) received a report alleging Mother and Father blew marijuana smoke into Child's mouth, and gave Child Benadryl to sleep.  Upon investigation, DHS learned that Mother and Father lived together and had a history of illegal drug use and mental health issues.  On September

---

[*] Former Justice specially assigned to the Superior Court.

[1] Child was born in June of 2016.

[2] G.F (Father) did not file an appeal, and he is not a party in this appeal.

[3] Child's court-appointed counsel has filed a brief in support of Child's adjudication and placement in kinship care.

5, 2019, the juvenile court placed Child in the emergency protective custody of DHS. DHS then placed Child in the home of his paternal aunt.

On September 6, 2019, the court held a shelter care hearing. During the hearing, DHS presented the testimony of Portia Henderson, the DHS investigative social worker, and G.F., Jr., Child's paternal grandfather. Thereafter, the court lifted the September 5, 2019 order of protective custody and ordered that Child be placed in shelter care.

DHS filed a dependency petition on September 11, 2019. The hearing occurred on September 20, 2019, during which all counsel stipulated that Ms. Henderson would testify consistent with the statement of facts in the dependency petition, although the parties did not stipulate to the veracity of the facts. N.T., 9/20/19, at 6; *see also* Dependency Petition, 9/11/19, at ¶ 5(a)–(o). DHS then presented the testimony of Ms. Henderson as well as that of S.F., Child's paternal grandmother. Further, DHS introduced — and the court admitted into evidence — reports regarding drug screens performed on Mother and Father at the Clinical Evaluation Unit (CEU) on September 6, 2019, which were positive for amphetamines. *Id.* at 6-7. Finally, the court incorporated all non-hearsay testimony from the shelter care hearing. *Id.* at 7.

By order dated and entered on September 20, 2019, the court adjudicated Child dependent and found that allowing him to remain in Mother and Father's home would be contrary to his best interests. The court directed that Child be placed in kinship care with his paternal grandparents.

- 2 -

Mother timely filed a notice of appeal and a concise statement of errors complained of an appeal pursuant to Pennsylvania Rule of Appellate Procedure 1925(a)(2)(i) and (b). The court filed its Rule 1925(a) opinion on November 13, 2019.

Mother presents the following issues for our review:

1. Did the [juvenile] court err by adjudicating Child dependent?

2. Did the [juvenile] court abuse its discretion and/or commit legal error in placing Child in kinship care given that [DHS] failed to show reasonable efforts to prevent the placement of Child in kinship care?

3. Did the court abuse its discretion and/or commit legal error in placing Child in kinship care given that [DHS] failed to prove that such separation was clearly necessary?

Mother's Brief at 3.

Our standard of review for dependency cases is as follows.

[T]he standard of review in dependency cases requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record, but does not require the appellate court to accept the lower court's inferences or conclusions of law. Accordingly, we review for an abuse of discretion.

*In re R.J.T.*, 9 A.3d 1179, 1190 (Pa. 2010) (citation omitted).

A dependency hearing is a two-stage process governed by the Juvenile Act (Act), 42 Pa.C.S. §§ 6301-6365. The first stage requires the trial court to hear evidence on the dependency petition and to determine whether the child is dependent. *See* 42 Pa.C.S. § 6341(a). Section 6302 defines a "dependent child," in part, as one who:

- 3 -

is without proper parental care or control, subsistence, education as required by law, or other care or control necessary for his physical, mental, or emotional health, or morals. A determination that there is a lack of proper parental care or control may be based upon evidence of conduct by the parent, guardian or other custodian that places the health, safety or welfare of the child at risk, including evidence of the parent's, guardian's or other custodian's use of alcohol or a controlled substance that places the health, safety or welfare of the child at risk[.]

42 Pa.C.S.A. § 6302. This Court has held that a child will only be declared dependent when he is presently without proper parental care or control, and when such care and control are not immediately available. *In the Interest of R.T.*, 592 A.2d 55, 57 (Pa. Super. 1991).

The Act provides, "If the court finds from clear and convincing evidence that the child is dependent," then the second stage of the dependency process requires that the court make an appropriate disposition based on an inquiry into the best interests of the child pursuant to Section 6351(a) and (b). 42 Pa.C.S. § 6341(c); *see also In re B.S.*, 923 A.2d 517, 521 (Pa. Super. 2007). This Court has defined "clear and convincing" evidence as testimony that is "so direct and unambiguous as to enable the trier of fact to come to a sure determination, without conjecture, of the truth of the exact facts at issue." *In the Matter of C.R.S.*, 696 A.2d 840, 845 (Pa. Super. 1997).

Regarding when a child should be removed from parental custody, this Court has stated:

The law is clear that a child should be removed from her parent's custody and placed in the custody of a state agency only upon a showing that removal is clearly necessary for the child's well-being. In addition, this [C]ourt had held that clear necessity for

- 4 -

removal is not shown until the hearing court determines that alternative services that would enable the child to remain with her family are unfeasible.

*In Interest of K.B.*, 419 A.2d 508, 515 (Pa. Super. 1980) (citations omitted). In addition, we have stated, "it is not for this [C]ourt, but for the trial court as factfinder, to determine whether [a child's] removal from her family was clearly necessary." *In the Interest of S.S.*, 651 A.2d 174, 177 (Pa. Super. 1994).

In her first issue, Mother argues that the evidence was insufficient for the juvenile court to adjudicate Child dependent. Specifically, Mother argues that the court relied on inadmissible hearsay from Ms. Henderson, the DHS social worker, who testified during the shelter care hearing that she learned from family members and another unidentified source that "Mother had overdosed in the past and there w[ere] some concerns of [phencyclidine] use and [methamphetamine]." Mother's Brief at 9 (citing N.T., 9/6/19, at 9, 12). In addition, Mother argues that Ms. Henderson's testimony regarding the allegations in the report submitted to DHS on September 3, 2019, was inadmissible hearsay. We disagree.

Our review reveals that Mother failed to object to the Ms. Henderson's testimony during the shelter care hearing. Therefore, Mother's first issue is waived. *See In re S.C.B.*, 990 A.2d 762, 767 (Pa. Super. 2010) (stating that "to preserve an issue for appellate review, a party must make a timely and specific objection at the appropriate stage of the proceedings before the trial

court. Failure to timely object to a basic and fundamental error will result in waiver of that issue.") (citation omitted).

Even if Mother's first issue was not waived, we would conclude it is meritless. It is well-settled that "decisions on admissibility are within the sound discretion of the trial court and will not be overturned absent an abuse of discretion or misapplication of law. In addition, for a ruling on evidence to constitute reversible error, it must have been harmful or prejudicial to the complaining party." **Phillips v. Lock**, 86 A.3d 906, 920 (Pa. Super. 2014) (citation omitted).

The Pennsylvania Rules of Evidence define hearsay as a statement that:

(1) the declarant does not make while testifying at the current trial or hearing; and

(2) a party offers in evidence to prove the truth of the matter asserted in the statement.

Pa.R.E. 801(c).

This Court has explained:

As a general rule, hearsay is inadmissible, because such evidence lacks guarantees of trustworthiness fundamental to our system of jurisprudence. The rule against admitting hearsay evidence stems from its presumed unreliability, because the declarant cannot be challenged regarding the accuracy of the statement. Notably, it is elemental that, [a]n out of court statement which is not offered for its truth, but to explain the witness' course of conduct is not hearsay.

**In re K.A.T.**, 69 A.3d 691, 702 (Pa. Super. 2013).

With respect to Ms. Henderson's testimony about allegations in the report to DHS, we conclude that it was not offered for the truth of the matter

asserted, but to explain how Child became known to DHS. Therefore, it did not constitute hearsay.

In addition, we reject Mother's assertion that Ms. Henderson's testimony was hearsay when Ms. Henderson testified that Mother "overdosed in the past and there w[ere] some concerns of [phencyclidine] use and [methamphetamine]." Mother's Brief at 9 (citing N.T., 9/6/19, at 9, 12). Ms. Henderson testified on cross-examination by Mother's counsel:

> Q. You said that . . . in your gathering of information, you were told that Mom did [overdose] in the past. That she used methamphetamines. Is that correct?
>
> A. The information I obtained was that Mom [overdosed] off of . . . heroin.
>
> Q. And, did you obtain that information from a family member?
>
> A. I did not.
>
> Q. Did you ask Mom about it?
>
> A. Yes, I did.
>
> Q. What did she say?
>
> A. She admitted to it.

N.T., 9/6/19, at 22. On redirect, Ms. Henderson clarified that Mother said "it was a while ago" when she used heroin. *Id.* at 24. As such, Ms. Henderson's testimony about Mother overdosing in the past does not constitute inadmissible hearsay. *See* Pa.R.E. 803(a)(25) (providing that an opposing party's statement is an exception to the rule against hearsay).

To the extent Ms. Henderson learned from out-of-court declarants about Mother using phencyclidine and methamphetamines, there is no indication in the record that the juvenile court considered this testimony as substantive evidence. However, even if the court did consider this evidence, we would conclude that the admission did not prejudice Mother. The court received other non-hearsay evidence sufficient to establish Child's dependency; namely, Mother's admitted history of heroin use, and Mother testing positive for amphetamines on the date of the shelter care hearing. Further, there is no indication in the record that Mother was medically prescribed amphetamines. **See** N.T., 9/6/19, at 6-7. Therefore, the court's admission of Ms. Henderson's testimony does not constitute reversible error.

Further, we discern no abuse of discretion by the court in adjudicating Child dependent. During the shelter care hearing, Ms. Henderson testified that when she visited Mother and Father's home on September 4, 2019, Father behaved erratically, appeared pale, and was "sweating profusely." N.T., 9/6/19, at 10. Ms. Henderson testified that she likewise became concerned that Mother was under the influence of drugs because Mother became "irritated, agitated . . . impatient" while at the hospital with Ms. Henderson during Child's emergency medical evaluation.[4] **Id.** at 11-12. Although Mother

---

[4] Ms. Henderson testified that she took Child for an emergency medical evaluation at St. Christopher's Hospital due to the allegation that Mother and Father blew marijuana smoke into his mouth. N.T., 9/6/19, at 8, 19-20.

did not admit to present use of illegal drugs, she refused to take a drug test on September 4, 2019. *Id.* at 24. Moreover, while acknowledging that she overdosed on heroin in the past, Mother never received any drug treatment. Dependency Petition, 9/11/19, at ¶ 5(i).

In addition, G.F., Jr., Child's paternal grandfather, testified that Father has a history of heroin use. N.T., 9/6/19, at 27-28. Paternal grandfather testified that Father has "been in and out of jail" and released to drug rehabilitation centers. *Id.* at 26-28. Paternal grandfather testified that prior to Christmas of 2018, he suspected Father was using drugs because Father "was about 240/250 pounds. . . . [and] about a month, two months later, . . . he's a bean pole." *Id.* at 27.

Ms. Henderson testified that in addition to Mother and Father needing drug evaluations, they needed mental health assessments as well. N.T., 9/20/19, at 11. Specifically, Ms. Henderson testified that Mother stated she suffers from depression and anxiety. N.T., 9/6/19, at 12. With respect to Father, Ms. Henderson testified on cross-examination by Father's counsel during the dependency hearing:

Q. What are your mental health concerns with regard to Father?

A. Dad stated that he is struggling with some health issues[,] which causes him to . . . get high.

_____

Child's urine sample was negative for drugs. *Id.* at 20-21; Dependency Petition, 9/11/19, at ¶ 5(e).

N.T., 9/20/19, at 15. Ms. Henderson also testified that Father "did express that some things happened in his childhood that he would like to process." *Id.* Finally, during the dependency hearing, Ms. Henderson testified that Child, then age three, had speech delays for which Ms. Henderson recommended early intervention services. *Id.* at 8.

Based on the foregoing testimony of Ms. Henderson and the paternal grandfather, as well as the documentary evidence showing that Mother and Father tested positive for amphetamines on September 6, 2019, we discern no abuse of discretion by the juvenile court in adjudicating Child dependent. Indeed, the record evidence clearly and convincingly demonstrates that Child was without proper parental care and control clearly necessary for his health, safety, and welfare.

Mother's second and third issues are related. Mother argues that the court abused its discretion by not considering whether reasonable efforts were made to prevent placing Child in kinship care, and that DHS failed to show that placing Child was clearly necessary for his well-being. Again, we disagree.

As best we can discern, Mother's argument involves the following provision of the Act, in relevant part:

> **§ 6351 Disposition of dependent child.**
>
> . . .
>
> **(b)  *Required preplacement findings.* —** Prior to entering any order of disposition under subsection (a) that would remove a

dependent child from his home, the court shall enter findings on the record or in the order of court as follows:

**(1)** that continuation of the child in his home would be contrary to the welfare, safety or health of the child; and

**(2)** whether reasonable efforts were made prior to the placement of the child to prevent or eliminate the need for removal of the child from his home, if the child has remained in his home pending such disposition; or

**(3)** if preventive services were not offered due to the necessity for an emergency placement, whether such lack of services was reasonable under the circumstances; or

42 Pa.C.S.A. § 6351(b).

Instantly, the juvenile court found that allowing Child to be returned to Mother and Father's home would be contrary to his welfare. Section 6351(b)(3), but not (b)(2), is applicable insofar as Child was initially removed from Mother and Father by emergency order for protective custody. As such, preventive services were not offered to Mother and Father when Child was placed on September 5, 2019. By adjudicating Child and placing him in kinship care, the court found that the lack of preventive services was reasonable, and Child's placement in kinship care was clearly necessary, based on the testimony of Ms. Henderson and the paternal grandfather, which the court found credible.

As detailed above, the testimonial evidence revealed that Mother had a history of heroin abuse and never received treatment. Likewise, Father had a

history of heroin use and more than one inpatient rehabilitation after release from prison. Ms. Henderson observed Father's erratic behavior and his appearance on September 4, 2019, and Father acknowledged that he gets "high"; also, both Mother and Father tested positive for amphetamines on September 6, 2019. In sum, the record supports the juvenile court's dependency adjudication.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/14/20